**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

SKY VAPORS, LLC d/b/a THE VAPOR ROOM,

               Plaintiff,

       v.                                   14-CV-01078-A

                                      **DECISION AND ORDER**

SALLY A. BLAZYNSKI a/k/a
SALLY A. BIAZYNSKI d/b/a THE VAPOR ROOM,

               Defendant.

_____

     This trademark infringement case is before the Court on the Plaintiff's motion for

damages, fees, and costs in the total amount of $140,124.42, following the Defendant's

default.  For the reasons stated below, the Plaintiff's motion is granted in part.  Judgment

shall be entered for the Plaintiff on all claims, in the total amount of $40,500.  Further, the

Plaintiff's motion for attorney's fees is denied, and the Clerk of Court shall tax the Plaintiff's

costs.

## BACKGROUND

     Because the Defendant has defaulted, the Plaintiff's well-pleaded allegations as to

the Defendant's liability are deemed admitted.  _See S.E.C. v. Razmilovic_, 738 F.3d 14,

19 (2d Cir. 2013).  Those facts are as follows.[1]

     The Plaintiff is a Maryland-based company that promotes, owns, and operates an

online retail store, as well as three retail establishments in Maryland and West Virginia,

---

[1]  The Court's factual summary includes evidence that is found in the record, but which was not alleged in
the complaint.  The Court did not consider these facts in deciding whether to grant the Plaintiff's motion for
default judgment, but the Court has considered them in determining the amount of damages to which the
Plaintiff is entitled.

that sell electronic cigarettes and related products to consumers throughout the United States, including in the Western District of New York. Compl. ¶¶ 1, 8. The Defendant owns, operates, and promotes a retail establishment in North Tonawanda, New York. *Id.* ¶ 2. Like the Plaintiff, the Defendant sells electronic cigarettes and related products. *Id.* ¶¶ 1-2.

The United States Patent and Trademark Office granted the Plaintiff's registration of the mark "The Vapor Room" on September 25, 2012. Compl. Ex. A. The Plaintiff has "vigorously promoted" its mark by spending over $100,000 on advertising that "expressly and specifically emphasize[s]" the mark "The Vapor Room." Compl. ¶ 7. In addition, the Plaintiff owns and operates a website—"thevaporroom.net"—on which it sells e-cigarettes and related products. Compl. ¶ 8.

The Defendant "promot[es] and operat[es]" her store using the mark "The Vapor Room." Compl. ¶ 11. In addition, the Defendant owns and operates a website with a URL that is nearly identical to the Plaintiff's—"tntvaporroom.com"—and she also operates a Facebook page using the name "The Vapor Room." Compl. ¶ 12, Ex. D. Both of the Defendant's websites advertise electronic cigarettes, and both websites use the name "The Vapor Room," along with logos containing the same phrase. Compl. Exs. C, D; Docket No. 8-1 at 3. In early 2014, the Plaintiff sent two certified letters demanding that the Defendant stop infringing its trademark, but the Defendant refused to accept receipt of either letter. Compl. ¶¶ 15-16.

The Plaintiff filed its complaint in this case several months later and thereafter served the complaint (but not the summons) on the Defendant. The next month, Plaintiff's counsel spoke with the Defendant, who agreed to change the name of her business.

2

Docket No. 8-1 at 4. Soon thereafter, the Defendant informed the Plaintiff that she had changed her store's name from "The Vapor Room" to "The Vape Room." Docket No. 8-2 Ex. D. In the Plaintiff's view, however, this new name was not sufficiently distinct from the Plaintiff's mark. Docket No. 8-2 Ex. E. The Defendant responded that the name change was "not in violation of any trademark" and that her Facebook page name would change within a week. Docket No. 8-2 Ex. D. In a follow-up email several weeks later, the Defendant informed the Plaintiff's counsel that she would be cancelling her website, "tntvaporroom.com." Docket No. 8 Ex. F.

The Plaintiff attempted to reach a settlement with the Defendant, but the parties were unable to do so. Docket No. 8-2 Ex. I; Docket No. 8-1 at 4. The Plaintiff then served the summons and complaint on April 22, 2015. Docket No. 8-1 at 4. The Defendant did not answer or move against the complaint. Docket No. 8-1 at 4. Two months later, the Defendant reiterated to the Plaintiff that her store name had changed and that her website had been taken down. Docket No. 8-2 Exs. I, J. There is evidence in the record, however, that as of July 3, 2016—more than two years after the Plaintiff first notified the Defendant of her infringement—the Defendant continued to use the mark "The Vapor Room" to promote her store. *See* Docket No. 21-2 (July 3, 2016 newspaper article identifying the Defendant as the proprietor of "The Vapor Room").

On August 21, 2015, the Clerk of Court entered a default in light of the Defendant's failure to answer or move against the complaint. Docket No. 7. The Court then granted the Plaintiff's motion for default judgment and authorized the Plaintiff to seek post-default discovery "in order to ascertain the amount of its recoverable damages." Docket No. 10. To that end, the Plaintiff served the Defendant with discovery requests. The Defendant,

however, ignored those requests, requiring the Court to grant the Plaintiff's motion to compel.[2]  Docket No. 14 at 3; Docket No. 19.  Approximately one month later, the Court issued an injunction prohibiting the Defendant from referencing the Plaintiff's "The Vapor Room" mark in relation to and concerning her business.  Docket No. 23.

As authorized by statute, and because the Defendant failed to respond to the Plaintiff's post-default discovery demands concerning damages, the Plaintiff now seeks $50,000 in statutory damages, pursuant to 15 U.S.C. § 1117(c), for violating the Lanham Act; $50,000 in statutory damages, pursuant to 15 U.S.C. § 1117(d), for violating the Anticybersquatting Consumer Protection Act (ACPA); $745 in costs; and $39,379.42 in attorneys' fees.  Docket No. 21 ¶¶ 8-10, 18, 19.  In total, the plaintiff requests $140,124.42. Docket No. 21 ¶ 19.[3]

## DISCUSSION

### 1. The Plaintiff's requests for damages, fees, and costs

In considering whether to enter default judgment, a court must determine (1) whether, drawing all reasonable inferences in the moving party's favor, the facts alleged in the complaint state a claim for relief as to each cause of action; and (2) where damages are sought for an uncertain sum, the amount of damages to be awarded.  *See* Fed. R. Civ. P. 55(b)(2); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).  Proof is required to establish damages unless the damages are liquidated or "susceptible of mathematical computation." *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir. 1974).  The Court has previously granted the Plaintiff's motion for default judgment on each of its claims,

---

[2] The Court also granted the Plaintiff's request for $1,411 in attorney's fees, which the Plaintiff incurred in connection with the motion to compel.

[3] The Plaintiff does not request damages for its state law claims.

*see* Docket No. 10, and the Court has also enjoined the Defendant from continuing to infringe the Plaintiff's mark. *See* Docket No. 23. Thus, the only issue before the Court is the Plaintiff's request for damages, fees, and costs.

A plaintiff seeking damages under the Lanham Act may seek actual or statutory damages, but not both. *Louis Vuitton Malletier S.D. v. LY USA, Inc.*, 676 F.3d 83, 105 (2d Cir. 2012). As noted, the Plaintiff seeks $50,000 in statutory damages, pursuant to 15 U.S.C. § 1117(c), for violating the Lanham Act; $50,000 in statutory damages, pursuant to 15 U.S.C. § 1117(d), for violating the ACPA; $745 in costs; and $39,379.42 in attorneys' fees. Docket No. 21 ¶¶ 8-10, 18, 19. A district court, however, "may not simply award the requested damages in a default judgment," but must, instead, "determine that the basis for the damages requested exists." *Lucks v. Southern Tier Elec. Inspections, Inc.*, No. 11-CV-860, 2015 WL 1822730, at *2 (W.D.N.Y. Apr. 22, 2015) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

## A. Statutory Damages

### i. Damages under the Lanham Act

The Lanham Act allows a court to award $1,000 to $200,000 in statutory damages per counterfeit mark. 15 U.S.C. § 1117(c). In the case of willful infringement, however, a court may award up to $2,000,000 per mark. 15 U.S.C. § 1117(c)(2). Here, the Defendant's use of the Plaintiff's mark was willful. Despite repeated notice from the Plaintiff—including certified letters, emails, and the complaint in this case—the Defendant continued to use the Plaintiff's mark for over one year. Docket No. 8-2 Exs. B, C, D; Docket No. 21-2. Thus, the $2,000,000 damages cap in 15 U.S.C. § 1117(c)(2) applies.

To determine an appropriate damages award, the Court must consider a number of factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*All-Star Marketing Group, LLC v. Media Brands Co., LTD.*, 775 F. Supp. 2d 613, (S.D.N.Y 2011) (citing *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986)). After considering these factors, the Court agrees with the Plaintiff that an award of statutory damages is appropriate, but the Court concludes that the Plaintiff's request of $50,000 is not supported by the record and the factors described above.

As the Court has previously noted in this case, the "Defendant's failure to respond to Plaintiff's discovery requests likely makes it difficult for Plaintiff to estimate its damages." Docket No. 19 at 4. Indeed, the record contains only one piece of evidence suggesting the profits the Defendant made from her infringement: a July 2, 2016 *Buffalo News* article which identifies the Defendant's business using the name the "Vapor Room" and which characterizes the Defendant's business as "booming." Docket No. 21-2 at 2.[4] Thus, while the Plaintiff has, understandably, not shown how much the Defendant reaped in profits from her infringement, the Court can reasonably infer that the Defendant's infringement helped her business to at least *some* degree. Nonetheless, because the

---

[4] The article does not use the word "booming" in quotation marks. Nonetheless, the Court can reasonably infer—particularly because the Defendant has failed to appear and, therefore, failed to rebut the Plaintiff's factual assertions—that the article's use of the term "booming" is based on information provided to the reporter by the Defendant.

record contains little reliable evidence of the profits the Defendant made from her infringement, the Court does not give much weight to that factor in deciding the appropriate amount of statutory damages.

The Court's damages award is, instead, driven largely by the fact that the Defendant's infringement was willful and by the need to deter similar conduct by the Defendant and others. As an initial matter, despite having knowledge of every step in this case, the Defendant has chosen to ignore both this lawsuit and the Court's orders directing the Defendant to respond to the Plaintiff's post-default discovery requests. This disregard for the Court's orders demonstrates the Defendant's flippant attitude towards her legal obligations, and it supports the conclusion that a damages award in this case must serve as a significant deterrent.

The need for a damages award to serve as a deterrent is most strongly supported, however, by the length of time the Defendant used the Plaintiff's mark after receiving notice of her infringement. The record shows that the Defendant continued using the Plaintiff's mark for over *a year-and-a-half* while having actual notice of her infringement. The Defendant had at least constructive notice of her infringement by early 2014, when the Plaintiff sent the Defendant several certified cease-and-desist letters.[5] Docket No. 8-2 at 6-9. And the Defendant had actual notice of her infringement, at the very latest, by January 2015. *See* Docket No. 8-2 at 14-15 (January 2015 email chain between Plaintiff's counsel and Defendant discussing name change). Despite this notice, the Defendant continued to use the Plaintiff's mark on her Facebook page—on which she appears to have engaged in aggressive marketing—until *at least* August 21, 2015. *See id.* at 22-32.

---

[5] According to the complaint, the Defendant refused receipt of these letters.

*See also id.* at 34 (July 28, 2015 newspaper feature identifying the Defendant's store as the "Vapor Room"). In addition, the record contains a July 2016 *Buffalo News* article identifying the Defendant as the proprietor of the "Vapor Room." Docket No. 21-2. In other words, the record—which is unrebutted—shows that the Defendant used the Plaintiff's *identical* mark for over two years after the Plaintiff first notified the Defendant of her infringement. This is strong evidence that the Defendant's infringement was willful. The Court's damages award must appropriately reflect the seriousness of this conduct, and it must also deter the Defendant and others from thinking that infringement does not have consequences.

Turning to the next factor, the record contains some evidence from which the Court can assess the value of the Plaintiff's mark. The Plaintiff has used its mark since 2010, and it has spent over $100,000 in advertising using its mark.[6] Moreover, the Plaintiff's online store gives it a national presence that likely further increases the value of its mark.

Of course, it is difficult to quantify the damage to the Plaintiff's mark caused by the Defendant's infringement. But even with that uncertainty, the Plaintiff's $50,000 damages request appears to be slightly excessive. The Plaintiff operates three retail stores in two states and offers its products to customers throughout the United States via its online store. Given the Plaintiff's nationwide presence, the Court is doubtful that the Defendant's business—a single storefront in North Tonawanda, New York—caused damages amounting to half the value of the Plaintiff's mark. Thus, the Plaintiff's requested damages award of $50,000 likely over-represents the Plaintiff's damages.

---

[6] The Court recognizes that the Plaintiff's advertising costs are likely a very poor estimate of the value of the Plaintiff's mark. However, the Plaintiff has provided no other evidence from which the Court can approximate the value of its mark.

The Court believes, instead, that a damages award of $40,000 is more appropriate. To be sure, a $40,000 award also likely over-estimates the cost of the Defendant's infringement, given the relative size of the parties. But if the Court's damages award is disproportional to the Plaintiff's actual damages, that is a problem solely of the Defendant's making. Most significantly, however, a damages award that over-represents the Plaintiff's actual damages is appropriate given the Defendant's continued use of the Plaintiff's mark after receiving notice of her infringement. In other words, awarding damages that substantially exceed what the Defendant likely earned from her infringement is necessary to deter the Defendant and others from ignoring clear and obvious cases of trademark infringement. Awarding the Plaintiff an even-lower damages amount in an effort to better approximate the Defendant's infringement-based profits would not accomplish this goal.

Thus, the Court concludes that a $40,000 damages award is appropriate for the Plaintiff's trademark infringement claims.

### ii. Damages under the ACPA

The Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1117(d), provides that a court may award statutory damages for a violation of the ACPA in the amount of $1,000 to $100,000 per domain name. 15 U.S.C. § 1117(d). In determining damages under the ACPA, courts generally consider the statute's goals of compensation and deterrence. *AW Licensing, LLC v. Wang Bao*, 15-CV-1373 (KBF), 2016 WL 4137453, at *4 (S.D.N.Y. Aug. 2, 2016); *J. Taikwok Yung v. Trump*, CV 11-1413(DLI)(VVP), 2014 WL 819417, at *2 (E.D.N.Y. Feb. 28, 2014), *aff'd sub nom. Yung*

*v. Trump*, No. 14-1554, 2016 WL 1696400 (2d Cir. Apr. 28, 2016). To that end, courts typically consider the following factors:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

*J. Taikwok Yung*, 2014 WL 819417, at *2 (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)).

In this case, an award under § 1117(d) is appropriate, but the Plaintiff's request for $50,000 is far too high given the facts of this case. In assessing an appropriate ACPA damages award, the Court is guided by three significant facts. First, unlike the Plaintiff's website, the Defendant's website did not sell e-cigarettes; rather, it only advertised the Defendant's physical retail store. *See* Compl. ¶ 13; Docket No. 8-2 at 42 ("We do Not sell online."). Second, unlike its continued use of the "Vapor Room" mark, the Defendant "closed" its infringing website within several months of service of the summons and complaint in this case. *Id.*[7] And third, the Defendant's infringing website, as reproduced in the record (Docket No. 1-3 at 2), was far from elaborate—it simply advertised the Defendant's retail store in North Tonawanda, New York, listed information about hours of operation, and invited users to "subscribe to our blog." *Id.* at 2-3.

Even if this is enough for the Plaintiff to obtain judgment on its ACPA claim, it is far from likely that the Plaintiff lost any revenue to the Defendant's website. If the Defendant

---

[7] Although the Defendant received notice that it was infringing the Plaintiff's mark in early 2014, the Plaintiff's cease-and-desist letter did not claim that the Defendant's website violated the ACPA or was otherwise illegal. Thus, the Court considers the period of knowing infringement for the Plaintiff's ACPA claim to be shorter than the period of knowing infringement for the Plaintiff's trademark claim.

had sold products on her website, the Plaintiff would have a stronger claim that the Defendant's site might have led consumers to think that they were ordering products from the Plaintiff when they were, in fact, ordering products from the Defendant. But the Court is skeptical that the Plaintiff lost any real revenue to a website from which the Defendant did not sell products. Rather, to the extent that the Defendant's website caused the Plaintiff to lose any revenue, it is far more likely that the lost revenue was due to Buffalo-area customers who saw the Defendant's website and then bought products from the Defendant's retail store. These lost revenues, however, are more appropriately remedied by the Court's damages award for trademark infringement, rather than for the Defendant's ACPA violation.

Thus, a minimal damages award is appropriate for the Defendant's ACPA violation. Given the facts described above, the Court finds that a $500 damages award is appropriate in light of those facts and the factors described above.

### B. Attorneys' fees

Under the Lanham Act, a court "may" in "exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a); *see also Louis Vuitton Malletier S.A.*, 676 F.3d at 112. Exceptional cases are those "involving fraud, bad faith, or willfulness." *Coty, Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 469 (S.D.N.Y. 2017). "The mere existence of a finding of bad faith, however, does not automatically entitle the prevailing party to attorneys' fees." *Gidatex, S.r.L. v. Campanillo Imports, Ltd.*, 82 F. Supp. 2d 136, (S.D.N.Y. 2000). In fact, "courts routinely decline to award attorneys' fees in cases involving willful infringement." *Mister Softee, Inc. v. Boula Vending*, 10-CV-02390(ARR)(JMA), 2011 WL 705139, at *1 (E.D.N.Y. Feb. 17, 2011), *aff'd*, 484 Fed.

Appx. 623, 624 (2d Cir. 2012) ("While we have said that a finding of willfulness, fraud, or bad faith is a *prerequisite* to finding a case sufficiently exceptional to warrant an award of fees under section 1117(a), we have never held that a finding of willfulness, fraud, or bad faith *automatically* requires an award of fees under that section.") (citation and quotation marks omitted; emphases in original); *see also Goodheart Clothing Co., Inc. v. Laura Goodman Enterprises, Inc.*, 962 F.2d 268, 272 (2d Cir. 1992) ("Whether to award attorney fees, and the amount of any award, are matters that fall within the discretion of the district court"); *Protection One Alarm Monitoring, Inc. v. Exec. Protection One Sec. Serv., LLC*, 553 F. Supp. 2d 201 (E.D.N.Y. 2008) ("Even with a finding of bad faith, the decision to award attorney's fees remains within the sound discretion of the district court").

Although it is close, the Court concludes that this is not an "exceptional" case warranting attorney's fees. The Defendant's default and subsequent failure to cooperate with this litigation are, of course, evidence of willful infringement. The record, however, also contains evidence that the Defendant negotiated with the Plaintiff, over the course of several months, in an attempt to resolve this matter. The Defendant, for instance, proposed a new name for her business shortly after the complaint was filed (Docket No. 8-2 at 14), and the Defendant represented to the Plaintiff in an undated 2015 email (*id.* at 36) that she was "in the process of completing the needed changes" for printing new signs. The Defendant also noted that she had "already changed the name of our shop, closed our Shopify account and closed our webpage." *Id.* Finally, the Defendant represented that she would shortly be changing the name of her Facebook page. *Id.* To be sure, the record contains evidence—namely, a July 2016 newspaper article, Docket No. 21-2—that the Defendant continued to use the mark the "Vapor Room" for a

substantial period of time after representing that she would be changing her store's name. That fact makes this a closer case.

After careful consideration of the entire history of this case, however, the Court concludes that this case is not "exceptional." Most importantly, nothing in the record remotely suggests that the Defendant began using the mark the "Vapor Room" with the intention of infringing the Plaintiff's trademark. *Cf. Mister Softee, Inc.*, 2011 WL 705139, at *2 ("It appears that defendants did not purchase their ice cream trucks with the intention of infringing plaintiffs' Mister Softee trademark, but instead, as former franchise operators of Mister Softee, Inc., were merely delayed in removing the trademarks from their trucks due to the prohibitive costs of removal.") Likewise, nothing suggests that the Defendant engaged in fraudulent conduct. At most, the record shows that the Defendant was less-than-cooperative with the Plaintiff. Failure to cooperate may support a claim of willful infringement—as it does here—or even bad faith, but it does not, by itself, make a case exceptional. *See Mister Softee of Brooklyn, Inc.*, 484 F. App'x at 624 ("[A] finding of willfulness . . . is a *prerequisite* to finding a case sufficiently exceptional" to warrant attorney's fees) (quotation marks omitted; emphasis added). The Defendant's infringement was somewhat prolonged, but the fact that the Defendant did not move with all due haste does not turn this into an "exceptional" case. The Plaintiff has not identified any other fact that makes this simple trademark infringement action an "exceptional" one. Thus, the Plaintiff's request for attorney's fees is denied.

**C. Costs**

Finally, the Plaintiff seeks $745 in costs, comprised of the filing fee and service fees. *See* Docket No. 21 ¶ 19.c. The Clerk of Court is accordingly directed, pursuant to Federal Rule of Civil Procedure 54(d)(1), to tax the Plaintiff's costs.

## CONCLUSION

For the reasons stated above, the Plaintiff's motion for damages is granted in part. The Court awards the Plaintiff $40,000 in damages for its trademark infringement claims and $500 in damages for its cybersquatting claim. Further, the Court denies the Plaintiff's request for attorney's fees. The Clerk of Court shall enter judgment for the Plaintiff on all claims and tax costs as required by Federal Rule of Civil Procedure 54(d)(1). The Clerk of Court shall also take all steps necessary to close this case.

**SO ORDERED.**

Dated: December 19, 2018          ___*s/Richard J. Arcara*_____
      Buffalo, New York          HONORABLE RICHARD J. ARCARA
                                 UNITED STATES DISTRICT JUDGE